# BALTIMORE CITY COURT.

Filed November 9, 1928.

JOSEPH CASALE, TRADING AS JOSEPH CASALE & COMPANY,
VS.
W. GUY CROWTHER.

*William B. Smith* for plaintiff.
*Janney, Ober, Slingluff & Williams* for defendant.

FRANK, J.—

The plaintiff and defendant herein entered into an agreement, dated September 16th, 1925, whereby the plaintiff, described therein as the contractor, agreed with the defendant, described therein as the owner, to provide all the necessary materials and labor and perform all work for the erection and completion of the stone work of the new stone residence of the defendant, as shown on the drawings and described in the specifications prepared by the architect, which are made a part of the agreement. The standard form of the general conditions of contract of the American Institute of Architects is also made a part of the agreement and "shall govern the execution of the work and all questions arising thereunder."

The contract price was $6,300 and, by a supplementary agreement, the additional sum of $1,000 was to be paid for the necessary stone work in connection with the garage upon the lot.

The defendant had paid $7,357.50 on account of the contract price and certain extra work aggregating $7,596.79,

leaving a balance due of $239.29. The defense is by way of recoupment, and the amount thus claimed is more than sufficient to offset the plaintiff's claim.

The items sought to be recouped are as follows:

Amount paid by the defendant to his carpenters for assisting in the building of the scaffold used by the plaintiff........$ 88.00
Cost of washing down the wall of the sun parlor, claimed not to have been done by the plaintiff under his contract.. 22.00
Cement, sand and stone furnished by the defendant to the plaintiff, at his request, aggregating .................. 63.20
For lumber furnished by the defendant to the plaintiff for scaffolding ................. 118.12
Cost of repairing sidewalk, claimed to have been damaged by trucks hauling stone to the plaintiff ................... 30.00

Total .................... $321.32

The determination of the exact relationship of the plaintiff and the defendant is rendered difficult by the fact that the standard form of contract, made a part of the contract between the plaintiff and defendant, is in terms of three parties—the owner, the contractor and the sub-contractor—and reference is made to sub-contractors in the specifications. The situation provided for by the standard contract contemplates the employment by the owner of a general contractor and the sub-contracting by the latter of portions of the whole contract. Thus, Article 1 provides in Sub-section (c) that that contractor shall be responsible to the owner for the acts and omissions of his sub-contractors, etc., and Sub-section (d) of the same article says that the terms "sub-contractor" includes only those having a direct contract with the contractor, and includes one who furnishes materials, even though he does no work. Articles 43 and 44 are devoted to sub-contractors and the relations of the contractor and sub-contractor. In the former article, among other things, the contractor agrees to be fully responsible to the owner for the acts or omissions of his sub-contractors. It is agreed that nothing contained in the contract shall create

any contractural relation between the sub-contractor and the owner. Article 44 states "The contractor agrees to bind every sub-contractor and every sub-contractor agrees to be bound by the terms of the general conditions, drawings and specifications, etc." These provisions are quite elaborate and involve the participation of three parties, viz., owner, contractor and sub-contractor. When we come to the specifications, we find a similar situation. Paragraph 7 requires all sub-contracts to be made in strict accordance with the drawing and specifications, and requires the contractor to furnish the names of all sub-contractors. Paragraph 18 provides that the specifications shall be binding on sub-contractors. Paragraph 20 forbids the contractor to sub-let the work as a whole, but permits him only to sub-let portions thereof. The various sub-contracts are to abide by the specifications and to be under the supervision of the architect, and to be acceptable to him, etc.

From a consideration of all these provisions, it is apparent that they are not literally applicable to the present case, in which the owner, himself, erected most of the building and contracted directly with the plaintiff for the doing of the stone work. Nevertheless, in some respects the defendant owner puts himself in the place of a contractor and undoubtedly the plaintiff here is in some respects in the position of a sub-contractor with relation to the doing of the other work upon the building. It is this conflict that makes the construction of the papers, embodying the contract between the parties, so difficult.

The plaintiff contends that he is in all respects the sub-contractor, and that the defendant is to be regarded as the owner and general contractor. He relies on the provisions of Sub-section (1) of Article 44 "That no claim for services rendered or materials furnished by the contractor to the sub-contractor shall be valid unless written notice thereof is given by the contractor to the sub-contractor during the first ten days of the calendar month following that in which the claim originated." It is not contended that any such written notice of the elements of his counter-claim was given by the defendant until after March 11, 1927. If this provision applies to the relation-

ship of the parties, it is apparent that it would eliminate all of the counter-claims of the above defendant, except those growing out of the alleged failure of plaintiff to wash down the wall of the sun parlor and out of the alleged injury to the sidewalk. On the other hand, the defendant invokes paragraph 9 of the specifications: "The contractor is to provide all materials and labor of every description for the complete and substantial execution of the work herein called for as may be described or reasonably implied in the drawings and specifications, including all transportation."

I have reached the conclusion that Sub-section (1) of Article 44 of the standard contract is applicable in this case. Thereby the contractor must, during the first ten days of the calendar month following that in which the claim originated, give written notice of any claim for services rendered or materials furnished. The owner here stands in the position of the general contractor. Like the general contractor, the owner had control of the whole work and himself did the major part thereof. He had material and labor on the job just as has a general contractor. The plaintiff calls upon him to furnish material and labor, which is not expressly provided for in the contract. He does so. To avoid controversy, the owner, like the contractor, must make his claim promptly and in writing. He failed to do so. His claim thereafter is not "valid," as stipulated in this section. The parties hereto must have intended that the contractor for the stone work alone should be in no less favorable position than he would have enjoyed as sub-contractor. For this reason, the counter-claim for lumber, cement, sand and stone and for labor furnished must fall. As respects the scaffolding, the testimony shows that it was used for other than the stone work and remained for other use after the stone work was completed.

I find, however, that the plaintiff failed to wash down the stone work in the sun room and offered to credit on his claim the cost thereof, if done by the defendant. This cost I find to be twenty-two dollars. I find further that the trucks hauling stone to the plaintiff damaged the defendant's sidewalk and that the reasonable cost of re-

pairing the same is thirty dollars. Owing to the failure of the plaintiff fully to perform his contract in the above particulars, and on account of the damage to defendant's sidewalk, I shall not allow the plaintiff any interest. The verdict is for the plaintiff for one hundred and eighty-seven dollars and twenty-nine cents ($187.29).